UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

In re VitaminSpice aka Qualsec
996 Old Eagle School Road, #1102
Wayne, PA  19087

Debtor

Case No. 11-16200MDC

Hon. Magdeline D. Coleman
Courtroom 5

**OPPOSITION TO MOTION TO APPOINT TRUSTEE UNDER §1104(a)(1)**

Pursuant to 11 U.S.C. § 1104 and other governing rules and case law, VitaminSpice, Inc. ("VitaminSpice") hereby submits its Opposition to Motion to Appoint Trustee Under § 1104 ("Motion"). In opposition to the Motion, VitaminSpice states as follows:

### INTRODUCTION

The Court should deny the Motion, or at least stay it, pending adjudication of an impending motion to dismiss the bankruptcy petition. VitaminSpice will be filing such a motion on several independent grounds. First, the petition is a bad-faith attempt by attorney Jehu Hand ("Hand") to injure VitaminSpice, his former client. Hand's improprieties are the subject of claims against Hand in a separate action pending in the Eastern District of Pennsylvania, which Hand filed against VitaminSpice before he launched the bankruptcy petition. The Court should consider those improprieties in this action as well, since bankruptcy petitions are not to be used as swords by alleged claimants seeking tactical advantages, which is exactly what is happening here.

VitaminSpice also will be seeking to dismiss the petition because all of the alleged "claims" are the subject of bona fide disputes. These claims are baseless, and there simply is no standing to assert them as support for an involuntary-bankruptcy petition.

4829-2027-0090.1                                    1

Accordingly, the Court should deny the Motion pending adjudication of these issues in a motion to dismiss. Alternatively, the Court should stay the Motion pending such adjudication.

The Court also should deny the Motion because it comes nowhere close to satisfying the high burden of proving "clear and convincing evidence" of "gross mismanagement" or "fraud." The Motion simply contains arguments, stating the claimants' alleged positions, rather than facts. The only "facts," indeed, are set forth in Hand's "declaration," which attaches documents and lets the Motion argue the theories that supposedly are supported by those documents. These arguments are not evidence or facts, and the Motion fails to satisfy the high burden of proof.

If the Court were inclined to consider these arguments, despite the absence of factual support, the Court should hold an evidentiary hearing. Hand must be part of such a hearing, since he has provided the only document purporting to provide factual support for the Motion. Accordingly, the Court should order him to appear, and require his examination. The Court will learn substantial information about the reasons for, and lack of bases of, the petition, once Hand is required to address those issues under oath.

## ARGUMENT

I. **THE COURT SHOULD DENY THE MOTION OR STAY IT PENDING ADJUDICATION OF VITAMINSPICE'S IMPENDING MOTION TO DISMISS THIS IMPROPER BANKRUPTCY FILING.**

    A. **VitaminSpice Will Be Moving To Dismiss The Petition on Numerous Independent Grounds.**

        1. **The petition is a bad-faith filing used by Hand as a weapon against VitaminSpice.**

The bankruptcy petition is part of a brazen attack against VitaminSpice by Jehu Hand, its former counsel, who has launched false filings in different jurisdictions to harm his former client and complete his fraudulent stock scheme against the company. Since the petition is a sword rather than

a shield, VitaminSpice will be moving to dismiss the bad-faith filing outright. *See In re Manhattan Industries, Inc.*, 224 B.R. 195 ("Using the bankruptcy process as a means to promote MBC's individual interest is not consistent with the Bankruptcy Code as it will allow MBC to use bankruptcy laws as a sword rather than as a shield," and thus dismissing the involuntary petition because "[t]he judgment claim obtained by MBC is subject to a 'bona fide dispute' and MBC filed for involuntary relief with the intent to frustrate the Debtor's New Jersey proceedings, thereby lacking good faith").

VitaminSpice has detailed its allegations against Hand in response to Hand's lawsuits, including in responsive filings in the Eastern District of Pennsylvania (Bukstel Decl. at ¶ 4) (the "Eastern District case") and a motion to set aside a improperly secured default judgment in North Carolina state court (the "North Carolina case"). (*Id.* at ¶ 5.) Hand's improprieties also will be the focus of VitaminSpice's motion to dismiss the bankruptcy petition filed in this Court.

Nevertheless, a brief summary of Hand's improprieties are in order here, since they show that Hand is using this petition as a weapon in his campaign against VitaminSpice. While he served as VitaminSpice's counsel, Hand was perpetrating stock fraud against the company and its shareholders by purchasing stock in the name of shell companies that he controlled. (*Id.* at ¶ 6.) When Mr. Bukstel discovered this stock scheme, he placed a stop-holder order on Hand's shares and terminated Hand as counsel. (*Id.*)

Hand, however, conspired with the transfer agent to secure control of the shares held by his shell companies. (*Id.* at ¶ 7.) He engaged in cover-up efforts to conceal his conduct, including forging and shredding documents. (*Id.*)

Hand then turned on his client with litigation as his weapon of choice. He used his shell companies to file the Eastern District case. (*Id.* at ¶ 8.) He worked with his brother, Learned Hand,

to file the North Carolina case, in which they were able to secure a default judgment by failing to give VitaminSpice proper service and/or notice. (*Id.*)

VitaminSpice has fought back. It has asserted counterclaims and third-party claims against Hand in the Eastern District Case. (*Id.* at ¶ 9.) VitaminSpice also moved to dismiss the Eastern District case or, alternatively, disqualify Hand from participating as counsel directly or indirectly because of Hand's egregious violations of his professional duties. (*Id.*)

To dodge those duties, Hand manufactured and invoked the absurd "bookkeeper defense." According to Hand, he really was not VitaminSpice's counsel at all. Instead, he merely was the "bookkeeper." That ridiculous argument contradicts all of the undisputed facts showing that Hand was VitaminSpice's counsel, including without limitation Hand's own engagement letter, his own statements clearly showing that he was acting as VitaminSpice's counsel, his own sworn testimony in depositions given in another case, and his use of "client-trust accounts" to funnel money from and to his shell companies. (*Id.* at ¶ 10.)

Significantly, Hand repeats this false "bookkeeper defense" in his declaration supporting the Motion in this Court. At the outset of the declaration, Hand makes the false assertion that he was hired as VitaminSpice's "internal bookkeeper." (Declaration of Jehu Hand ("Hand Decl.," at ¶ 2.) He repeats that false "bookkeeper" moniker throughout the filing. (*See id.* at ¶¶ 4, 5, 6, 8, 9.) Repeating the label "bookkeeper," however, does not make it true.

There are additional falsities in Hand's declaration. Again at the outset, Hand states that he "was never an officer of the Debtor...." (Hand Decl., at ¶ 2.) Hand, however, considered and represented himself as a "Vice President" of VitaminSpice. (Bukstel Aff., at ¶ 11.)

VitaminSpice then moved to vacate the default judgment in the North Carolina case and dismiss that action *with prejudice*. (*Id.* at ¶ 12.) Nevertheless, Hand has brought that default

judgment to this Court, using the bankruptcy process in an attempt to extract payment from VitaminSpice despite the absence of any basis for the judgment. Then, adding insult to injury, Hand has filed his own affidavit as the lone purported factual support for his motion to appoint the trustee.

Hand then backdated and falsified a filing in the Eastern District case to avoid disqualification and dismissal. One of VitaminSpice's arguments focused on the fact that Hand failed to file an affidavit in opposing VitaminSpice's motion to dismiss or disqualify. On August 16, 2011, the day after VitaminSpice filed its reply brief with that argument, Hand finally filed a declaration purportedly signed on August 4, 2011. (*Id.* at ¶ 13.) That declaration, however, copied and pasted paragraphs, verbatim, from the affidavit filed in this proceeding on August 8, 2011, and even included several references to VitaminSpice as a "Debtor," proving that the declaration was signed after August 8, 2011, not on August 4, 2011, as Hand falsely stated on the tardily filed declaration. (*Id.*)

This is a classic case of a bad-faith filing intended to injure VitaminSpice rather than address legitimate concerns of a real creditor. Accordingly, VitaminSpice will be seeking dismissal of the petition on that ground, among others.

### 2. There are bona fide disputes as to the alleged "claims."

VitaminSpice also will be moving to dismiss the petition because the alleged "claims" are subject to bona fide disputes. *See In re Lough*, 57 B.R. 993, 995 (E.D. Mich. Bankr. 1986) (holding that "if there is a bona fide dispute as to either the law or the facts, then the creditor does not qualify and the petition must be dismissed"). The petition lists five alleged claims, all of which are groundless and subject to vigorous – let alone bona fide – dispute.

- John Robison and VitaminSpice are involved in a dispute and litigation over whether there are any monies owed under the "promissory note" that is the basis for Mr. Robison's claim. (Bukstel Aff., at ¶ 14.) The case is pending in Chester County, Pennsylvania. VitaminSpice asserts that Hand forged

- Bukstel's signatures on the note and related documents. VitaminSpice also disputes that there was any default under, or breach of, that note. Moreover, the alleged claim ($58,000) does not match the amount of the note ($35,000) and Mr. Robinson's allegations seek usurious interest rates. In addition, none of the monies were received from Mr. Robinson. Instead, they were taken by Hand. (*Id.*)

- IBT ("IBT") of South Florida is a shell company controlled by Jehu Hand. (Bukstel Aff., at ¶ 15.) In fact, monies that were wired to IBT were deposited into Hand's client-trust account. (*Id.*) VitaminSpice disputes that there was any violation of a "promissory note" with IBC, and that VitaminSpice owes any monies to IBC.

- As discussed above, VitaminSpice disputes that there is any legitimate "judgment" secured by Learned J. Hand, Jehu Hand's brother, and VitaminSpice has moved to set aside that judgment. (*See supra* at p. 3.)

- Jehu Hand is not owed any "expense reimbursement." This "claim" contradicts the "invoice" submitted by Hand. (Bukstel Aff., at ¶ 16.) In addition, VitaminSpice is seeking substantial damages from Hand in the Eastern District case, and any allegedly unpaid "expense reimbursement" must be setoff against amounts owed by Hand to VitaminSpice.

- Esthetics World is another shell company controlled by Jehu Hand. (Bukstel Aff., at ¶ 17.) VitaminSpice has received no documentation related to this alleged "claim," and VitaminSpice disagrees and disputes that it owes any monies whatsoever to Esthetics World.

**B.     The Court Should Deny the Motion Or Defer Pending Adjudication Of The Motion to Dismiss.**

VitaminSpice, therefore, will be moving to dismiss the petition. It makes abundant sense, therefore, to deny the motion to appoint a trustee given the impending motion to dismiss. Alternatively, the Court should stay the motion pending adjudication of the motion to dismiss.

II. **HAND'S AFFIDAVIT IS REPLETE WITH FALSE STATEMENTS THAT DO NOT SATISFY HIS HIGH BURDEN OF PROOF FOR THE EXTRAORDINARY REMEDY OF APPOINTING A TRUSTEE.**

   A. **The Motion Includes Arguments, Not Evidence, Based On Hyperbole and Rank Speculation.**

Hand's filing also fails to satisfy his burden of showing "clear and convincing evidence" that there was any "gross mismanagement" or "fraud," except for the fraud committed by Hand himself. *See In re: Tanglewood Farms, Inc.*, 2011 Bank. LEXIS 624, *4 (E.D.N.C. Bankr. 2011) ("The movant has the burden of proof and must demonstrate gross mismanagement of the property or fraud by clear and convincing evidence"). Hand clearly has not shown that there was any "actual harm" caused to any "legitimate creditor." *See id.* (denying a motion to appoint a chapter 11 trustee because, although an "account was a ruse, the court does not perceive any actual harm caused a creditor by it. Thus it does not rise to the level of gross mismanagement or fraud").

The motion is based on hyperbole and outlandish allegations rather than facts. The Motion, for example, cherry-picks alleged entries from nine months of bank statements. (Motion, at p. 6.) However, there is no factual support for the argument that these amounts, or certainly the "$198,800" number mysteriously derived by Hand, were spent "on personal items." The Motion simply picks several incendiary examples, extrapolates and speculates based on those, and then asserts the bald conclusion without any factual support.

Moreover, the truly troubling aspect of these expense reports is that Hand secured them during his tenure as VitaminSpice's counsel. (Bukstel Aff., at ¶ 17.) It is highly improper (and an egregious violation of Pennsylvania Rule of Professional Conduct 1.9) for Hand to bring an action against his former client and support that action with alleged information learned during the course of his work as counsel. VitaminSpice has moved to dismiss the Eastern District case on that ground,

and this Court should deny the Motion and dismiss the petition because of these violations by Hand of established rules of professional conduct.

The Motion's allegations of "dishonesty" are similarly baseless and hypocritical. The Motion makes much of the allegations by Robison supporting its claim, but this discussion simply tells Robison's side of the story, which, as discussed above, is the subject of ongoing litigation between Robison and VitaminSpice, showing that this "claim" is the subject of a bona fide dispute. (Motion, at p. 7.) In addition, the Motion simply makes arguments about Robison's positions. These arguments are not facts, and they cannot satisfy the high burdens faced in asking the Court to appoint a trustee.

These same deficiencies are prevalent in the Motion's discussions of alleged "dishonesty" in connection with claims by IBT and "Tritos, aka Stock Market Consulting, Inc." (Motion, at p. 8.) The Motion simply argues about alleged facts and accuses Bukstel, largely through implication, that he was untruthful or "posturing." (Motion, at pp. 7-8.) These arguments about disputed facts do not prove dishonesty. They simply argue the claimant's positions, without any real factual support.

Even more tenuous are the allegations of "gross incompetence." (Motion, at pp. 8-11.) The Motion, obviously written by Hand, argues inferences from alleged facts, citing excerpts from documents and arguing about what "the reader" is supposed "to understand" from those excerpts. (*Id.*) Drawing inferences, often by comparing disclosure statements with press releases, is not proof of "gross incompetence." At most, these arguments and inferences purport to support Hand's theory (tellingly stated in the Motion) that VitaminSpice "is unsuccessful." (Motion, at p. 9.) Arguing whether or why a company is "unsuccessful," however, cannot constitute "clear and convincing" evidence that the Court must undertake the extraordinary remedy of appointing a trustee.

The Motion closes with the hypocritical theory of "Bukstel's stock fraud." (Motion, at pp. 1113.) This is nothing but a rehash of the allegations asserted by Hand's shell companies in the Eastern District case. VitaminSpice has denied those allegations and asserted counterclaims showing that Hand – not Bukstel – has been perpetrating a widespread scheme of stock fraud against VitaminSpice, causing substantial damage to the company and its legitimate shareholders. (Bukstel Aff., at ¶ 4.) In any event, the Motion simply contains argument using rank speculation to connect dots that do not exist. This is not evidence of anything, including "stock fraud," and it certainly is not "clear and convincing" evidence of anything except Hand's improper attempt to exact damage upon his former client with outlandish accusations that are aimed to injure rather than enlighten.

**B.   If the Court Were Inclined To Consider Any Of These Arguments, It Should Hold An Evidentiary Hearing and Require Hand To Testify Under Oath.**

As discussed above, the Motion comes nowhere close to satisfying the high burdens of showing the basis for the extraordinary remedy of a trustee. Instead, the Motion simply argues the alleged creditors' positions, taking bits and pieces of alleged facts and trying to concoct theories by connecting those allegations through speculation and inference.

If the Court were inclined to entertain these arguments, despite their infirmities, the Court should hold an evidentiary hearing to test these arguments under the light of the evidence. Thus far, Hand's affidavit is the lone source of potential facts, although it mainly attaches documents and lets the Motion argue the factual conclusions that supposedly are to be drawn from those documents. Accordingly, the Court should order Hand to appear for the evidentiary hearing to be examined and cross-examined as to any facts that are relevant to the Motion, including the purposes for which he has filed the petition and declaration, and the extent to which he has engaged in professional improprieties that preclude him from launching litigation attacks against his former client.