## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re VitaminSpice aka Qualsec<br>996 Old Eagle School Road, #1102<br>Wayne, PA  19087<br><br>Debtor | Case No. 11-16200MDC<br><br>Hon. Magdeline D. Coleman<br>Courtroom 5 |

### MOTION TO DISMISS THE IMPROPER INVOLUNTARY PETITION
### AND LIFT THE AUTOMATIC STAY PENDING ADJUDICATION OF THIS MOTION

Pursuant to 11 U.S.C. §§ 105, 303, 305, 362(d)(1), Fed. R. Bankr. P. ("Rule") 1011, 9011, and other governing rules and case law, VitaminSpice, Inc. ("VitaminSpice") hereby submits its Motion to Dismiss the Improper Involuntary Petition and Lift the Automatic Stay ("Motion"). In opposition to the Motion, VitaminSpice states as follows:

### INTRODUCTION

The Court should dismiss the involuntary petition on several independent grounds.  First and foremost, the petition is a bad-faith filing aimed at preempting several pending cases and avoiding the consequences of misconduct committed by the supposed "creditors," including Jehu Hand, who actually was VitaminSpice's counsel before he turned on the company.  There are several such pending cases, including a civil action in the Eastern District of Pennsylvania.  Hand filed this petition just days after VitaminSpice asserted claims in that action against Hand and filed a motion to dismiss the action based on Hand's breaches of his professional duties and other improprieties.

It is improper to use the bankruptcy process as a shield to seek immunity from the consequences of misconduct.  The Court should dismiss the petition and, pending adjudication of

this Motion, lift the automatic stay and allow the Eastern District civil action, and the other actions pending between the "creditors" and VitaminSpice, to proceed.

The Court also should dismiss the petition because it is based on numerous falsities and misrepresentations. The alleged debts are baseless, manufactured with false statements and total mischaracterizations of the facts and the parties' relationships (including Hand's novel "bookkeeper" defense, which attempts to avoid his professional duties by misrepresenting himself as VitaminSpice's "bookkeeper" rather than counsel).

This petition, in sum, is a classic case of an abuse of process. It is a bad-faith filing focused on strategic and tactical maneuvers rather than a legitimate request by real creditors. The Court should dismiss the petition, award VitaminSpice its attorneys' fees and costs, and set a hearing to determine VitaminSpice's compensatory and punitive damages. The so-called creditors need to receive a loud-and-clear message that these types of improper abuses of process will not be tolerated.

## ARGUMENT

11 U.S.C. § 305(a) gives the Court the discretion to dismiss or stay an involuntary bankruptcy petition. 11 U.S.C. § 303 also permits the Court to dismiss an involuntary petition that has been filed in bad faith. "Whether to dismiss a case or abstain pursuant to section 305 is submitted to the discretion of the bankruptcy court, and is determined based upon the totality of the circumstances." *In re Mylotte, David & Fitzpatrick*, 2007 Bankr. LEXIS 3572, at * 17 (E.D. Pa. Bankr. Oct. 11, 2007).

There are various "non-exclusive" factors that may be considered in determining whether to dismiss or stay an involuntary petition: "(1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and

equitable solution; (4) whether there is an alternative means of achieving the equitable solution; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought." *In re Mylotte, David & Fitzpatrick*, 2007 Bankr. LEXIS 1726, at *17.

### I. THE COURT SHOULD DISMISS THE PETITION ON SEVERAL INDEPENDENT GROUNDS.

#### A. The Petition Is A Bad-Faith Filing And Abuse Of The Bankruptcy Process To Exact Payment Over Baseless Claims.

"When a Bankruptcy Court suspects an involuntary filing is a sham or is collusive, the Court may make proper inquiry into the circumstances of the filing." *In re Judah Grossinger*, 268 B.R. 386 (S.D.N.Y. Bankr. 2001). *See In re Dino's, Inc.*, 183 B.R. 779, 783 (S.D. Ohio Bankr. 1995) (holding that bad faith depends on an objective assessment of "whether a reasonable person in the petitioning creditor's position would have filed the bankruptcy petition").

#### 1. The Petition Was Engineered By VitaminSpice's Former Counsel To Stay His Own Lawsuit And Avoid Impending Inquiries Into His Own Professional Misconduct And Wrongdoing Against VitaminSpice.

"Filing an involuntary petition for an improper purpose also manifests bad faith." *In re Judah Grossinger*, 268 B.R. at 387. Courts have found such "an improper purpose" and "bad faith" if the petition was filed for some strategic advantage in other pending litigation. *See In re: TRED*, 2010 Bankr. LEXIS 3109 (E.D. Tex. Bankr. 2010) (dismissing an involuntary petition and sanctioning petitioners because, among other reasons, counsel "knew that none of these individuals or entities held undisputed claims against[debtor] as required for them to sustain an involuntary

4826-0236-0074.1                                   3

petition pursuant to § 3039b) of the Bankruptcy Code" and the claims against debtor "were the subject of litigation at the time they joined the involuntary petition").

Hand filed this bankruptcy petition in order to stay litigation that he commenced, with the goal of avoiding a judicial inquiry into his multiple violations of professional and common-law duties to VitaminSpice. Specifically, on June 8, 2011, Hand and his shell companies (including purported "creditors" on the bankruptcy petition) filed a lawsuit against VitaminSpice and Bukstel, its Chief Executive Officer, seeking damages based on various allegations concocted by Hand. (*See Advanced Multilevel Concepts, Inc. et al. v. Bukstel and VitaminSpice,* Case No. 11-3718 (E.D. Pa. 2011).)

On July 22, 2011, Bukstel and VitaminSpice filed their Answer, Counterclaims and Third-Party Claims against Hand and his shell companies. (Affidavit of Edward Bukstel ("Bukstel Aff."), attached hereto as Exhibit 1, at ¶ 3, Exh. A.) That pleading sought substantial damages for the wide-ranging stock fraud and other misconduct perpetrated by Hand and his shell companies against VitaminSpice and Busktel. (*Id.*)

In particular, Bukstel and VitaminSpice alleged that, shortly after Hand became VitaminSpice's counsel, Hand developed and engineered a plan to seize control over VitaminSpice's stock and reap substantial profits as a result of that control. (*Id.* at ¶¶ 11-24.) Hand used his shell companies to acquire substantial amounts of VitaminSpice's stock, and then profited by trading and manipulating the price of that stock. (*Id.*)

When Bukstel became aware of Hand's improprieties, Bukstel terminated Hand and informed the transfer agent, Stalt, Inc. ("Stalt"), which put a stop-hold order on Hand's improperly controlled shares. (*Id.* at ¶¶ 28-29.) Hand, however, conspired and worked with Stalt to negate the stop-hold orders and allow Hand (through his shell companies) to continue trading and profiting

from VitaminSpice's stock. (*Id.*) Hand then undertook cover-up efforts, including the shredding and forgery of documents, to hide his misconduct. (*Id.*)

Accordingly, on July 22, 2011, Bukstel and VitaminSpice asserted claims against Hand for securities fraud (*id.* at ¶¶ 32-37), common-law fraud (*id.* at ¶¶ 38-43), negligent misrepresentation (*id.* at ¶¶ 44-49), and breaches of fiduciary duties (*id.* at ¶¶ 50-53).

That same day, July 22, 2011, Bukstel and VitaminSpice filed their Motion to Dismiss the Complaint or Disqualify Plaintiffs' Counsel for Attorney Misconduct ("Motion to Dismiss"). (Bukstel Aff., at ¶ 4, Exh. B.) The Motion to Dismiss sought to dismiss the case outright, or alternatively disqualify Hand, because of his numerous instances of professional misconduct, including his ethical improprieties in suing his former client based on information supposedly learned during the course of Hand's attorney-client relationship with VitaminSpice. (*Id.*)

On August 5, 2011, Hand and his shell companies filed their Opposition to the Motion to Dismiss ("Opposition"). (Doc. No. 14.) The Opposition introduced and relied on the novel (arguably unprecedented) "bookkeeper defense." According to Hand, he was not VitaminSpice's counsel at all, despite the uniform evidence to the contrary. Instead, he was merely retained as VitaminSpice's "bookkeeper," a laughable moniker contradicted by the parties' engagement letter, communications, Hand's multiple legal services performed as VitaminSpice's counsel, the parties' course of dealing, and common sense. (Bukstel Aff., at ¶ 5, Exh. C.)

Significantly, the bankruptcy petition was filed on August 8, 2011, *the next business day after Hand asserted the "bookkeeper defense" as his attempt to avoid dismissal and disqualification*. It is clear, therefore, that the bankruptcy petition was aimed at staying VitaminSpice's claims and avoiding the consequences of Hand's and his shell companies' wrongdoing against VitaminSpice.

4826-0236-0074.1                                        5

The petition also was intended to avoid the adjudication of Hand's Opposition and, with it, a judicial assessment of Hand's absurd and baseless "bookkeeper defense."

The petition, therefore, was used as a shield against the litigation and adjudication of improprieties committed by Hand and his shell companies.

In addition, the petition also was used as a sword to enforce, as a "claim" by a "creditor," an improperly secured default judgment against VitaminSpice.

The default judgment was secured on July 29, 2011, shortly before the petition was filed on August 8, 2011. The default judgment, however, was secured improperly. As an initial matter, the North Carolina court had no personal jurisdiction over VitaminSpice. (Bukstel Aff., at ¶ 6, Exh. D.) In addition, VitaminSpice was not served properly with the complaint and summons. (*Id*.) Furthermore, the plaintiff – Jehu Hand's brother, Learned Hand – did not provide sufficient notice of his application for a default, as required by governing rules and case law. (*Id.*) Accordingly, VitaminSpice filed a motion to vacate the default judgment, which is pending before the court. (*Id.*)

Now the Hand brothers (Jehu and Learned) have come to this Court to gain strategic advantage from the bankruptcy process in two independent respects. First, they are trying to use the improperly obtained default judgment to stay the motion to vacate as to VitaminSpice. That way, they can "freeze" the default judgment against VitaminSpice and avoid VitaminSpice's multiple independent grounds on which to vacate that judgment. Second, they also are trying to use the improperly obtained default judgment to bolster and support the bankruptcy petition, despite the obviously contested nature of the judgment.

The bankruptcy petition, in sum, is being used as both a sword and shield by Hand, his shell companies, and his brother Learned. They are seeking to use the petition as a shield to immunize themselves from the claims and arguments asserted in the case they filed in the Eastern District of

Pennsylvania. And they also are trying to use the petition as a sword to enforce, and evade the challenge against, an improperly obtained default judgment in North Carolina state court.

In fact, there is direct evidence showing that Hand planned this bankruptcy petition, long before he filed it, as a weapon against the disclosure of his stock fraud and improprieties against VitaminSpice. Hand threatened the petition when he was confronted at a meeting called to discuss the drop in VitaminSpice's stock price and Hand's dumping of the stock. (*See* Affidavit of Kevin Donovan, attached hereto as Exhibit 2; Affidavit of Kurt Benjamin, attached hereto as Exhibit 3.) At the meeting, Hand responded to those concerns by denying that he owned any VitaminSpice stock (despite his control over other stockholders) and threatened to force the company into involuntary bankruptcy. (*Id.*) Undeterred about the resulting harm to the company and other shareholders, Hand proceeded with the filing in any event, but not until his misconduct became the subject of claims asserted by VitaminSpice, as discussed above.

This is the precise type of bankruptcy petition that represents a bad-faith filing and abuse of the judicial process. "An improper use of the Bankruptcy Code justifying a finding of bad faith will then exist any time a creditor uses an involuntary bankruptcy to obtain a disproportionate advantage to that particular creditor's position, rather than to protect against other creditors obtaining such a disproportionate advantage. This is especially true where the petitioning creditor could have obtained that advantage in an alternate forum." *In re Better Care, Ltd.*, 97 B.R. 405, 410 (N.D. Ill. Bankr. 1990). Similarly, it is established that the Court should dismiss an involuntary petition that "has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment." Senate Report No. 95-989. *See In re RAI Marketing Services, Inc.*, 20 B.R. 943, 946 (D. Kan. Bankr. 1982) ("Petitioning creditors are generally disgruntled, but when they are motivated by reasons other than the debtor's insolvency, the court should take a second look at the situation to

see if in fact bankruptcy is the best route for all concerned"); *In re: RV Seating, Inc.*, 8 B.R. 663 (S.D. Fla. Bankr. 1981) ("To allow the recovery of the alleged debtor's claims or accounts receivable to be eaten up by the expenses of bankruptcy administration would serve the interests of neither the petitioning creditor nor the alleged debtor. This factor and the adequacy of the remedies available to the petitioning creditor under Florida law lead the Court to conclude that the interests of the petitioning creditor and the alleged debtor would be better served by the dismissal of this case").

The Court, therefore, should dismiss the petition as an improper attempt to gain strategic advantages in other cases, and allow VitaminSpice to proceed with the litigation of those cases and expose the wrongdoing committed by Hand, his shell companies, and his brother.

### 2. Hand Also Engineered The Petition To Force Payment On Purported Debts That Are Vigorously Disputed.

Petitioners bear the burden of establishing that the alleged claims are due and owing, and are not subject to bona filed disputes. Hand filed the petition in bad faith in order to exact leverage to secure payment over debts that vigorously contested. In fact, three of the putative debts are the subject of litigation currently pending in other courts – one in state court in North Carolina and two others in Pennsylvania state and federal courts, respectively. Accordingly, none of the claimed "debts" are properly before this Court, which should dismiss the petition on that ground as well.

#### a.    Learned Hand's Default Judgment

The largest claim by far against VitaminSpice listed in the involuntary petition is for $262,702.24. The alleged creditor, Jeremiah Hand, has identified this debt as a "judgment." However, this "judgment" actually is a default judgment that was entered in a North Carolina action, and is the subject of a motion to vacate. (*See* Bukstel Aff., at ¶ 6, Exh. D.) Jeremiah Hand filed the North Carolina lawsuit against VitaminSpice but failed to properly serve the Complaint or the Summons. (*Id.*) Without proper notice, VitaminSpice was never afforded the opportunity to appear

and contest Jeremiah's allegations. (*Id.*) Nonetheless, days after improperly securing the bogus default judgment, Jeremiah ran to this Court (with his brother Jehu) and used the default judgment to bolster the baseless bankruptcy petition.

Nowhere does Learned Hand (or Jehu Hand) disclose that this was a default judgment. The petition simply states "judgment," to give it an artifice of legitimacy. This type of misrepresentation pervades the petition in multiple respects, discussed herein, and clearly the default judgment cannot serve as a legitimate bona fide debt on which to base the petition in any event.

### b.    IBT

This is an improper loan that Hand used for his own personal and pecuniary gain. The alleged loan proceeds were wired into Hand's client-trust account. (Bukstel Aff., at ¶ 7, Exh. E.) Hand commingles funds in that account from numerous sources, including his shell companies and a variety of other persons and entities, without making any attempt to segregate those funds or determine which funds, if any, belong or pertain to any specific client. (Bukstel Aff., at ¶ 8.) In fact, Hand has admitted that he uses his client-trust accounts for "hundreds" of stock transactions, and Hand also uses those accounts as his piggybank for personal transactions that have nothing to do with any of his clients. (*Id.*)

Petitioners have argued, in their motion to appoint a trustee, that these amounts were deposited into VitaminSpice's account, as supposedly reflected on VitaminSpice's general ledger and account statements, but the amounts on the ledger and statements do not reflect the note amount. (Bukstel Aff., at ¶ 9, Exhs. F and G.) Moreover, there is no evidence that the deposits, and reflected in the ledger and statements, have anything to do with the alleged IBT loan.

There is additional evidence showing that the entire IBT debt is a trumped-up attempt to extort substantial funds from VitaminSpice through baseless litigation threats. Consider, for

example, a missive sent by "MICHAEL SHULMAN, PA," who supposedly was acting "AS AGENT FOR RAY SUPRENARD IBT SOUTH FLORIDA." (Bukstel Aff., at ¶ 10, Exh. H.) Shulman refers to the "certain note made March 11, 2010," which allegedly was for "35,000," yet he makes a "[f]inal demand … for the sum of $120,836.00." Shulman further demands payment "in full before June 20, 2011 or thereafter if paid before July 21, 2011 the sum of $132,919.00 and 420,000 SHARES if delivered in full before June 20, 2011 or thereafter if delivered before July 21, 2011 455,000 SHARES," which Shulman demands must "no longer bear the Standard Rule 144 legend, the holder of the note having demanded release from any restriction on sale thereof." (*Id.*) (emphasis in original).

IBT's and Shulman's outrageous demand note concludes as follows: "GOPVERN YOURSELF ACCORDINGLY." (*Id.*) (sic) (emphasis in original). They also attach a chart purporting to show how the "$35,000" note somehow balloons from to "$132,919.00," in just over a year, at levels that are beyond usurious. (*Id.*) Another chart tries to explain how an alleged debt of "35,000 SHARES" multiplies into an obligation to transfer "455,000 SHARES" over that timeframe. (*Id.*)

The Shulman missive speaks volumes about the alleged IBT "claim." Assuming the note has the terms described by its "agent" Shulman, those terms are outrageous and unenforceable. And Hand's fingerprints are all over this alleged note and "claim." Hand participated in drafting the note; the monies were wired into his account; and he communicated and coordinated with IBT. (Bukstel Aff., at ¶ 10.)

The IBT "claim," in other words, was part and parcel of Hand's scheme to create phony debts from which he would skim proceeds as some kind of "finder fee," then demand and exact ridiculous amounts of money and stock as so-called "interest," either directly (on behalf of his shell

companies) or indirectly (on behalf of others with whom he would work and coordinate as counsel). The IBT claim is phony, not bona fide, and it cannot serve as the basis for a legitimate claim.

### c.   Robison

The alleged Robison "claim" also is a trumped-up and phony debt, nowhere near bona fide, and is hotly contested in a separate case pending in Pennsylvania state court. As with the IBT note, the Robison note was prepared by Hand. (Bukstel Aff., at ¶ 11.)   Indeed, Bukstel did not even sign the note, which instead was signed by someone (probably Hand) in a poor attempt to imitate Bukstel's signature.

There are other similarities between the Robison and IBT "loans." The Robison loan proceeds also were transferred into Hand's commingled client-trust account. (*Id.* at ¶ 12.) Also like the IBT loan, Hand skimmed monies off the top, presumably as some sort of finder fee. (*Id.*) Also, the amounts allegedly wired into VitaminSpice's account do not match with the IBT loan, and it is impossible to determine that those amounts actually were the monies supposedly loaned by IBT rather than from some other source. (*Id.*)

In addition, the characters involved with the Robison loan are highly suspect, even more than IBT's "agent" Shulman with his usurious demands for interest and stock. This time, Hand involved someone named Kevin Woodbridge, who was "entrusted" with the loan proceeds, according to Robison. (Bukstel Aff., at ¶ 13, Exh. I.)

Woodbridge previously pleaded guilty to "racketeering, securities fraud, money laundering, illegal structuring of monetary transactions, and conspiracy to commit securities and wire fraud," as stated in a Litigation Release by the Securities and Exchange Commission. (*Id.* at Exh. J.) Woodbridge, apparently released from prison, found a teammate in Hand, who received the loan proceeds with which Woodbridge was "entrusted" by Robison.

4826-0236-0074.1                                                                 11

All of these issues already are part of an ongoing case in which VitaminSpice is challenging the Robison loan. After Robison filed suit in Pennsylvania state court, VitaminSpice filed its answer and affirmative defenses on January 21, 2011. (Bukstel Aff., at ¶ 14, Exh. K.) That case was active and proceeding when Hand engineered the improper involuntary bankruptcy petition and Robison joined it in an obvious effort to stop the litigation before the truth comes out.

The Court should dismiss the petition and allow the Robison litigation to proceed. Discovery in that case will reveal the relationships, communications and coordination between and among Hand, Woodbridge and Robison, who should face the consequences of their improprieties in that case rather than use the bankruptcy petition as both a shield to hide those improprieties and a sword to enforce the bogus Robison loan.

### d.    Esthetics World

The alleged "claim" by Esthetics World for "cash on deposit" is manufactured from whole cloth. There was no note between VitaminSpice and Esthetics World. Nor was there any verbal promise or other obligation by VitaminSpice to Esthetics World. Indeed, there is no shred of any documentation evidencing any such obligation or supporting this supposed "claim."

Instead, Esthetics World's only apparent involvement is that it was the shell company referenced by Hand when he wired monies from his client-trust account. (Bukstel Aff., at ¶ 15, Exh. L.) VitaminSpice was entitled to those monies, which were consideration for the reverse merger engineered by Hand. (*Id.*)

There simply is no legitimate "claim" by Esthetics World to anything from VitaminSpice. To the contrary, the "claim" is based on the mere fact that Hand used the name of Esthetics World when he wired moneys from his commingled client-trust account to VitaminSpice. This is not a true

"claim," but rather an attempt by Hand to benefit from his own improper use of shell companies to hide his control over VitaminSpice stock.

It is telling that Esthetics World never tried to enforce this claim. Esthetics World never sent a demand letter, never had an "agent" send one (as IBT did ), and never filed a lawsuit asserting any claim against VitaminSpice (as Robison did). Esthetics World's silence speaks volumes about the basis for its "claim," or lack thereof.

If Esthetics World ever tried to file such a lawsuit, discovery would disclose the truth and reveal all of the facts regarding Hand's use of the shell company to seize control over VitaminSpice stock. VitaminSpice, indeed, already has secured a document itemizing various wire transfers from Hand's client-trust account, including several in the name of Esthetics World, to others with whom Hand communicated and coordinated to purchase and sell VitaminSpice stock. (Bukstel Aff., at ¶ 16, Exh. M.)

This document is the tip of the iceberg, and it shows why Esthetics World never tried to enforce any claim for "cash on deposit" at VitaminSpice. The bankruptcy proceeding is not the appropriate forum to introduce such a claim, which is nowhere near bona fide, and cannot prop up the bankruptcy petition.

e.    **Jehu Hand**

Jehu Hand's "claim" for "expense reimbursement" adds insult to injury. As an initial matter, Jehu Hand cannot asset a claim and, at the same time, characterize himself as a "bookkeeper," an employee, which cannot be a creditor for purposes of an involuntary bankruptcy petition.

In addition, there simply is no basis for this claim. Hand is not entitled to any "expense reimbursement" from VitaminSpice. (Bukstel Aff., at ¶ 17.) There is no basis for such a claim, and it is the ultimate in hypocrisy for Hand to harm and damage VitaminSpice with his rampant

scheme of stock fraud and then suggest that he should get "$25,151.20" for "expense reimbursement."

### 3. Hand Made Numerous False Statements In His Affidavit Supporting The Motion To Appoint A Trustee.

The Court also should dismiss the petition because Hand's affidavit, which he filed in support of the motion to appoint a trustee, is laden with fabrications and falsities that constitute frauds perpetrated on this Court. Bukstel has described several of these falsities in his affidavit opposing that motion, and Bukstel will be testifying about those falsities -- and many others – at the hearing scheduled for September 7, 2011. (Bukstel Aff., at ¶ 18.) The multiple falsities also are pertinent to this Motion, in that they further show that the petition is a bad-faith filing aimed at harming VitaminSpice and gaining strategic advantage rather than seeking appropriate and justified relief in this forum.

### B. The Court Should Dismiss The Petition Because The Bankruptcy Proceeding Has Had – And Will Continue To Have – Deleterious Impacts On VitaminSpice's Ongoing Business.

The Court also should dismiss the petition because the bankruptcy proceeding has harmed – and will continue to harm – VitaminSpice's ongoing business operations. *See In re Fortran Printing, Inc.*, 297 B.R. 89, 97(N.D. Ohio Bankr. 2003) (recognizing that "[a]nother evaluative factor is the effect that a bankruptcy proceeding will have on the debtor's ongoing business operations," and granting a motion to dismiss the petition because, among other things, debtor's "business has made an economic upturn and is still conducting business with its primary creditors and suppliers," whereas there were "negative implications of this involuntary").

The petition already has had deleterious and debilitating impacts on VitaminSpice's operations, and more are threatened if the Court permits the petition to succeed. ((Bukstel Aff., at ¶ 19.) In fact, the petition is the single most significant threat to VitaminSpice's financial health and

well-being. (*Id.*) This is precisely the opposite effect that the bankruptcy process is intended to realize, and the Court should dismiss the improper petition and allow VitaminSpice to recover and have a fair opportunity to prosper in the marketplace.

## II. THE COURT SHOULD SANCTION PETITIONERS FOR THIS FILING AND AWARD VITAMINSPICE ITS ATTORNEYS' FEES AND COSTS.

11 U.S.C. § 303(i)(1) authorizes the Court to award costs and reasonable attorneys' fees if it dismisses an involuntary petition "other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection….." When an involuntary petition is dismissed, there is a rebuttable presumption that the debtor is entitled to attorneys' fees and costs. *In re Scrap Metal Buyers of Tampa, Inc.*, 253 BR 103 (MD Fla. 2002). In addition, the Court may award "any damages proximately caused by" a filing made "in bad faith, as well as "punitive damages" for such a filing. 11 U.S.C. § 303(i)(2).

"A materially false statement in support of an involuntary petition constitutes bad faith for purposes of section 303(i)(2)." *Koffman v. Osteoimplant Technology, Inc.*, 182 B.R. 115, 124 (D. Md. Bankr. 1995). *See also* 11 U.S.C. § 105(a) (providing that courts "may issue any order, process, or judgment that is necessary or appropriate … to prevent an abuse of process"); Rule 9011 (authorizing sanctions for signing certain documents not "well grounded in fact ," not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," or "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation").

As discussed above, the petition is a bad-faith filing aimed at harming VitaminSpice rather than securing some legitimate protection for which the bankruptcy process is intended. Accordingly, the Court should award VitaminSpice its attorneys' fees and costs, as well as damages caused by this

improper filing, including compensatory and punitive damages for this malicious abuse of the judicial process.

### III. THE COURT SHOULD LIFT THE AUTOMATIC STAY PENDING ADJUDICATION OF THIS MOTION.

The Court has authority to "grant relief" from the automatic stay, "such as by terminating, annulling, modifying, or conditioning such stay for cause…." 11 U.S.C. § 362(d)(1). "The Bankruptcy Code does not define 'cause' for lifting the automatic stay. However, it is well-established that the existence of pending litigation against the debtor in a nonbankruptcy forum may constitute cause. When deciding whether to grant stay relief in such circumstances, courts apply a balancing test that takes into account a variety of factors." *In re Coachworks Holdings, Inc.*, 418 B.R. 490 (M.D. Ga. Bankr. 2009). Filing an involuntary bankruptcy petition to avoid relief in another case constitutes bad faith. *See In re: TRED*, 2010 Bankr. LEXIS 3109 (E.D. TX 2010).

There is substantial cause for lifting the automatic stay. There are several cases pending between the parties, including the civil case pending in the Eastern District of Pennsylvania (in which Hand's shell companies have sued VitaminSpice, and VitaminSpice has asserted claims and counterclaims against those companies and Hand), the case in North Carolina state court (in which Learned Hand secured an improper default judgment that VitaminSpice is seeking to vacate), and the case pending in Pennsylvania state court (in which VitaminSpice has asserted defenses against Robison). These pending cases, in and of themselves, constitute cause for which the Court should lift the automatic stay.

The Court also should lift the automatic stay because VitaminSpice needs to assert its claims in those other actions in order to survive financially. Investors have expressed substantial concerns about the cases filed by Hand and his shell companies, and VitaminSpice would have an opportunity to address those concerns with the ability to defend itself, pursue claims against the parties that have

filed those improper actions, and seek damages for the multiple instances of misconduct perpetrated against VitaminSpice, its officers, and its legitimate shareholders.

In particular, the Court should lift the automatic stay on an interim basis pending the adjudication of this Motion. The stay is holding up the pending cases, with substantial costs to VitaminSpice and no benefit, and there is no reason to maintain the stay while the Court adjudicates this Motion. If the Court were to lift the automatic stay yet deny the Motion, there also would be no harm caused, in that the litigation in the other forums would resume in the bankruptcy court during the normal course of the process.

## CONCLUSION

Wherefore, for the reasons set forth above, VitaminSpice respectfully requests that the Court; (a) grant this Motion; (b) dismiss the petition; (c) lift the automatic stay, on an interim basis pending adjudication of this Motion; (d) award VitaminSpice its attorneys' fees and costs; and (e) set a hearing to determine the compensatory and punitive damages to be imposed on the petitioning creditors because of their improper bad-faith filing.

Dated: September 2, 2011	Respectfully submitted,

/s/ Derek J. Baker
Derek J. Baker, Esquire
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100
*Attorneys for Defendants VitaminSpice, Inc.*
*and Edward Bukstel*


/s/ Hillard Sterling
Hillard Sterling, Esquire
**LEWIS BRISBOIS BISGAARD &**
**SMITH LLP**
550 W. Adams. Suite 300
Chicago, Illinois
*Attorneys for Defendants VitaminSpice, Inc.*
*and Edward Buktsel*